## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| JAMES DANIEL SPORISH,         : | |
|         Petitioner,    : | |
|                 : | |
|      v.              : | No. 2:12-cv-4142 |

JAMES DANIEL SPORISH,        :
          Petitioner,    :
               :
    v.           :     No. 2:12-cv-4142
               :
MICHAEL W. HARLOW, THE DISTRICT   :
ATTORNEY OF THE COUNTY OF      :
DELAWARE, THE ATTORNEY GENERAL :
OF THE STATE OF PENNSYLVANIA,    :
        Respondents.    :

_____

### <u>MEMORANDUM</u>
**Report and Recommendation, ECF No. 36 - Adopted**
**Order Dated May 7, 2015, ECF No. 37 - Affirmed**
**Motion for Stay and Abeyance, ECF No. 50 - Denied**
**Motion for Leave to Amend, ECF No. 51 - Granted**

**Joseph F. Leeson, Jr.**                            **September 26, 2016**
**United States District Judge**

## I.      INTRODUCTION

On July 19, 2012, Petitioner James Daniel Sporish filed a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254, challenging his conviction of rape, aggravated assault,

sexual assault, terroristic threats, simple assault, and indecent assault in the Delaware County

Court of Common Pleas.  Magistrate Judge Henry S. Perkin issued a Report and

Recommendation ("R&R") on May 7, 2015, recommending that the habeas corpus petition be

denied with prejudice and dismissed without an evidentiary hearing.  The same day, the

Magistrate Judge entered an Order denying pretrial motions.  Petitioner filed objections to the

R&R, including an appeal from the Order denying pretrial motions, and a request for an

evidentiary hearing.  Subsequently, Petitioner filed a Motion for Stay and Abeyance pending the

state court's resolution of his second PCRA petition.  He also filed a Motion for Leave to Amend

his petition for writ of habeas corpus.  For the reasons set forth below, the objections to the R&R

are overruled, the request for an evidentiary hearing is denied, the Motion for Stay and Abeyance

is denied, and the R&R is adopted.  Petitioner's Motion for Leave to Amend is granted, but the

habeas corpus petition, including the additional claim, is dismissed.  The May 7, 2015 Order

denying pretrial motions is affirmed.

## II.    FACTUAL[1] and PROCEDURAL BACKGROUND[2]

On or about March 13, 2006,[3] Petitioner and his girlfriend, Kristine Gregg, were living

with a friend, James Handlin.[4]  N.T. 20:11-21:5, Trial, Oct. 26, 2006, *Sporish*, No. 3043-06.[5]

That evening, Petitioner, who had been drinking, became angry at Ms. Gregg and ordered her

into the bedroom.  *Id.* at 22:3-23:14.  Once in the bedroom, he held her in a headlock and

punched her with closed fists at "full force" in the head, face, ears, eye, and mouth.  *Id.* at 23:21-

24:22.  Petitioner got a kitchen knife, stood at the end of the bed, and told Ms. Gregg he was

going to slit her throat.  *Id.* at 24:23-25:1.  He repeatedly stabbed at the bed near Ms. Gregg's

face, and beat on her legs and head.  *Id.* at 25:4- 26:3.  Ms. Gregg's ears were bleeding from the

assault and she pleaded with Petitioner to stop, but he forced her to have sexual intercourse with

him.  N.T. 24:11-28:16.  When Ms. Gregg cried "No, no" and tried to push him away, Petitioner

---

[1]    All of the facts in this section were also cited in the trial court's opinion.  *See*
*Commonwealth v. Sporish*, No. CP-23-CR-0003043-2006, slip op. at 6-9 (Del. Cty. Ct. Com. Pl.
Sept. 10, 2007) ("Trial Ct. Op.").

[2]    This Memorandum contains only a summary of the factual and procedural background of
this case.  After de novo review of the record, this Court adopts and incorporates the additional
factual and procedural histories outlined in the R&R.  *See* R&R 1-12, ECF No. 36.

[3]    *See* Criminal Information, *Sporish*, No. 3043-06 (filed June 8, 2006).

[4]    There are multiple spellings of Mr. Handlin's name throughout the state and federal
record, including "Handlin," "Hamlin," and "Handling," but there is no question that all
references pertain to the same individual.

[5]    Unless otherwise indicated, "N.T. __" refers to the notes of testimony from the trial on
October 25, 2006.

became more violent.  N.T. 28:4-14.  After the forcible intercourse, Petitioner grabbed the knife, held it to Ms. Gregg's throat, and threatened to kill her and to take their one-year-old daughter, who was in her crib in the same room.  *Id.* at 30:19-31:14, 47:16-48:21.  Petitioner tied his wrist to Ms. Gregg's wrist in order to keep her next to him all night.  N.T. 28:15-21, 32:1-35:1, 48:14-49:3.  Ms. Gregg went to the hospital the following day, and reported the incident[6] to hospital staff and the police.  N.T. 40:14-41:15, 57:14-20.

Petitioner was convicted of all charges on October 26, 2006, following a three-day jury trial.  N.T. 101-105.  He was sentenced on February 20, 2007, to seventeen and a half (17 ½) to forty-five (45) years imprisonment.  Trial Ct. Op. 2; N.T. 11, Sentencing, Feb. 20, 2007, *Sporish*, No. 3043-06.  Post-sentence motions were denied.  Trial Ct. Op. 3.  The Pennsylvania Superior Court affirmed judgment on August 7, 2008.  *Commonwealth v. Sporish*, No. 1702 EDA 2007 (Pa. Super. Aug. 7, 2008).  The Pennsylvania Supreme Court denied a petition for allowance of appeal on July 22, 2009, *see Commonwealth v. Sporish*, 64 MAL 2009 (Pa. July 22, 2009), and Petitioner's judgment of sentence became final ninety days thereafter on October 20, 2009.

Petitioner filed a petition pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. 9543, *et seq.*, on December 16, 2009.  *Sporish*, No. 3043-06 at PCRA Pet. and Mem. Law.  The PCRA petition was dismissed on the merits without a hearing on February 2, 2011.  *Id.* at Order, Feb. 2, 2011, and slip op. at 3 (Mar. 17, 2011) ("PCRA Ct. Op.").  The Pennsylvania Superior Court affirmed on January 18, 2012.  *Commonwealth v. Sporish*, No. 453 EDA 2011 (Pa. Super. Jan. 18, 2012) ("Pa. Super. PCRA Op.").  The Pennsylvania Supreme Court denied a petition for allowance of appeal on June 19, 2012.  *See Commonwealth v. Sporish*, No. 92 MAL 2012 (Pa. June 19, 2012).

---

[6]  Any reference to "the incident" in this Memorandum refers to the events in the bedroom where Petitioner raped, assaulted, and threatened Ms. Gregg.

The instant petition for writ of habeas corpus was filed on July 19, 2012, and supplemented on January 2, 2013.  ECF Nos. 1, 16.  On May 7, 2015, Magistrate Judge Perkin issued an R&R, thoroughly discussing each of Petitioner's claims for relief.  R&R, ECF No. 36.  In a separate Order dated May 7, 2015, the Magistrate Judge denied pending pretrial motions.  ECF No. 37.  On May 18, 2015, Petitioner filed a request for an extension of time to file objections to the R&R, which was granted.  ECF Nos. 38-39.  Petitioner did not file a timely appeal from the Order denying his pretrial motions, nor did he seek an extension of time in which to do so.  Rather, he attempts to raise this issue in his objections to the R&R, which were filed on July 16, 2015.  ECF No. 43.  Also on July 16, 2015, Petitioner filed a request for an evidentiary hearing, ECF No. 42.  The action was reassigned to the Undersigned on July 23, 2015.  On November 17, 2015, Petitioner filed a Motion for Leave to Amend his petition for writ of habeas corpus based on newly discovered evidence.  ECF No. 51.  Petitioner also filed a Motion for Stay and Abeyance of his habeas petition pending the outcome of his second PCRA petition, which he filed on or about November 12, 2015.  ECF No. 50.  The second PCRA petition has since been denied, and that decision was affirmed on appeal to the Pennsylvania Superior Court.  *See Sporish*, No. 3043-06, docket.

After de novo review of the original and supplemental habeas corpus petitions, the briefs relating thereto, the various motions filed in this action, the R&R, Petitioner's objections to the R&R, and the entire state court record, Petitioner's objections to the R&R are overruled and the R&R is adopted without an evidentiary hearing.  Petitioner's Motion for Stay and Abeyance is denied, and although his Motion for Leave to Amend is granted, the habeas corpus petition, including the additional claim, is dismissed.  The May 7, 2015 Order denying pretrial motions is affirmed.

4

III.    STANDARDS OF REVIEW

A.    R&R with objections

When objections to a report and recommendation have been filed under 28 U.S.C. §
636(b)(1)(C), the district court must make a de novo review of those portions of the report to
which specific objections are made.  *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989);
*Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984) (holding that "providing a complete de novo
determination where only a general objection to the report is offered would undermine the
efficiency the magistrate system was meant to contribute to the judicial process").  Local Rule of
Civil Procedure 72.1(IV)(b) requires that "written objections . . . specifically identify the
portions of the proposed findings, recommendations or report to which objection is made and the
basis for such objections."  Further, the objections may not raise new issues or evidence that
could have been, and was not, presented to the magistrate judge.  *See* L.R. 72.1(IV).  "When no
objections are filed, the district court need only review the record for plain error or manifest
injustice."  *Harper v. Sullivan*, No. 89-4272, 1991 U.S. Dist. LEXIS 2168, at *2 n.3 (E.D. Pa.
Feb. 22, 1991); *see also Oldrati v. Apfel*, 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998).  The district
court may accept, reject, or modify, in whole or in part, the findings and recommendations
contained in the report.  28 U.S.C. § 636(b)(1)(C).

B.    Pretrial matters

The Federal Magistrate Judges Act, 28 U.S.C. § 636, "allows Magistrate Judges to hear
and determine non dispositive pretrial matters."  *Wrench Transp. Sys. v. Bradley*, 212 F. App'x
92, 100 (3d Cir. 2006).  A district judge may reconsider any pretrial matter only where it has
been shown that the magistrate judge's order is "clearly erroneous or contrary to law."  28 U.S.C.
§ 636(b)(1)(A).  The party seeking review of the order must appeal to the district court within 10

days after being served with a copy of the order.  *Continental Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998).

### C.      Habeas corpus petitions under 28 U.S.C. § 2254

On federal habeas review, the Antiterrorism and Effective Death Penalty Act ("AEDPA") "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (internal quotations omitted).  "This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[T]he 'contrary to' provision is only implicated if the state court 'applies a rule that contradicts the governing law set forth' by the Supreme Court or if it arrives at a different result when confronted by 'facts that are materially indistinguishable' from those previously before the Supreme Court."  *Hunterson v. Disabato*, 308 F.3d 236, 245 (3d Cir. 2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  In applying the "unreasonable determination of the facts" standard, "federal court review considers only whether the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Hunterson*, 308 F.3d at 245-46.

"The statute directs the federal court to presume that all determinations of fact made by the state court are correct and requires that the petitioner present 'clear and convincing evidence' to rebut this presumption." *Id.* at 246, 250 (stating, "if permissible inferences could be drawn either way, the state court decision must stand, as its determination of the facts would not be unreasonable").

### D.       Claims of ineffective assistance of counsel

To establish counsel's ineffectiveness, a petitioner must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the performance was prejudicial to the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). There is a strong presumption that counsel is effective and the courts, guarding against the temptation to engage in hindsight, must be "highly deferential" to counsel's reasonable strategic decisions. *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002). The mere existence of alternative, even more preferable or more effective, strategies does not satisfy the first element of the *Strickland t*est. *Id.* at 86. To establish prejudice under the second element, the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Roe v. Flores-Ortega*, 528 U.S. 470, 482 (2000) (quoting *Strickland*, 466 U.S. at 694). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689 (explaining that courts should not second-guess counsel's assistance and engage in "hindsight, to reconstruct the circumstances of counsel's challenged conduct"). The court must consider the totality of the evidence and the burden is on the petitioner. *Id.* at 687, 695.

## IV.    ANALYSIS

### A.    An evidentiary hearing is barred by 28 U.S.C. § 2254(e)(2) and, regardless, a hearing would not enable Petitioner to prove facts entitling him to habeas relief.

The AEDPA "permits evidentiary hearings on habeas review, but only in a limited

number of circumstances." *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).  The statute

provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
> (A) the claim relies on--
>   (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>   (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  "Under that section, a habeas court is barred from holding an

evidentiary hearing unless the petitioner was diligent in his attempt to develop a factual basis for

his claim in the state court proceedings, or the petitioner satisfies the criteria set forth in

§ 2254(e)(2)(A) and (B)."  *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010) (internal

citations omitted).  "If the request for an evidentiary hearing is not barred by Section 2254(e)(2),

the district court has discretion to grant the request."  *Burton v. Glunt*, No. 07-1359, 2013 U.S.

Dist. LEXIS 174805, at *93-94 (E.D. Pa. June 5, 2013), *adopted by* 2013 U.S. Dist. LEXIS

173830 (E.D. Pa. Dec. 11, 2013).  In exercising its discretion whether to hold a hearing, the court

should consider: (1) "whether such a hearing would enable the petitioner to prove the petition's

factual allegations, which, if true, would entitle the petitioner to relief," and (2) "if the record

refutes the petitioner's factual allegation or otherwise precludes habeas relief, a district court is

not required to hold an evidentiary hearing."  *Id.* at *94-95 (denying the request for an

evidentiary hearing because a hearing would not advance the petitioner's claims).  "Moreover, in

those instances where a full record has not been developed by the petitioner in state criminal

proceedings, we are also cautioned to conduct evidentiary hearings sparingly." *Aguirre v. Lawler*, No. 1:10-CV-306, 2010 U.S. Dist. LEXIS 132293, at *34 (M.D. Pa. Nov. 9, 2010).

Petitioner argues that the Court should hold an evidentiary hearing on his claim that trial counsel was ineffective for failing to investigate whether the incident occurred on March 13, 2006, or a day earlier.  Mot. Hr'g, ECF No. 42.  Petitioner asserts that he informed defense counsel that the events Ms. Gregg testified to at the preliminary hearing, which she stated took place on March 13, 2006, actually occurred on March 12, 2006.[7]  Petitioner, while not admitting to having committed the rape and assault, states that he knows the events occurred a day earlier based on the television programming he was watching, *The Sopranos*, which aired from 9:00 p.m. until 10:00 p.m. on March 12, 2006, and based on the persons who were visiting both nights.  Petitioner claims that the friend who made a comment, which Ms. Gregg testified caused Petitioner to snap at her and direct her to go into the bedroom where the assault and rape occurred, was watching *The Sopranos* with him on March 12, 2006.  He asserts that because Ms. Gregg informed the nurse at the hospital that she had consensual sex with Petitioner on March 12, 2006, then if that was the actual date of occurrence, he is not guilty.  Additionally, as will be discussed in greater detail below, Petitioner asserts that if trial counsel had called James Hamlin to testify, he could have confirmed that the incident must have occurred on March 12, 2006.  Petitioner argues that no reasonable jury would have found him guilty but for counsel's ineffectiveness in failing to obtain this evidence.

---

[7]     Petitioner raised the possibility of the incident having occurred on March 12, 2006, in the PCRA petition, but did not allege that this was the actual date of the offense, nor did he present any grounds for an evidentiary hearing in the state court on this issue.  *See* PCRA Petition 70-71.  Regardless, the PCRA court rejected Petitioner's argument of trial counsel's ineffectiveness.  PCRA Ct. Op. 8-9; Pa. Super. PCRA Op. 13-14.  For the reasons discussed herein, this Court agrees with the state court.

Petitioner is barred from receiving an evidentiary hearing because his allegations do not rely on a new rule of constitutional law, nor does he allege that there has been retroactive change in the law.  *See* 28 U.S.C. § 2254(e)(2)(A)(i).  Also, his claim is not based on a factual predicate that could not have previously been discovered.  *See* 28 U.S.C. § 2254(e)(2)(A)(ii).  Rather, Petitioner claims that he informed defense counsel, prior to trial, of the alleged discrepancy in dates.  To the extent he alleges that trial counsel was ineffective for failing to investigate James Hamlin, Petitioner states that, before trial, he told trial counsel about Mr. Hamlin, who was included on the prosecution's list of potential witnesses, and that Mr. Hamlin gave a statement to the police months before the trial began.

Additionally, Petitioner's claim that he would have been acquitted if the incident actually occurred on March 12, 2006, due to Ms. Gregg's statement at the hospital that they engaged in consensual sex on that date, is unpersuasive.  At trial, the nurse who performed the sexual assault examination of Ms. Gregg, Tara Scherf, R.N., testified that her examination of Ms. Gregg took place on March 14, 2006, at 8:10 p.m., and that Ms. Gregg reported that the assault started at 11:00 p.m. on March 13, 2006.  N.T. 133:2-12.  In reviewing the medical records, Nurse Scherf stated that she checked off that Ms. Gregg had consensual intercourse in the prior 72 hours and specifically listed the date of March 12, 2006, at 10:00 p.m.  *Id.* at 148:7-11.  However, regardless of the exact date of the incident, it is clear from Nurse Scherf's testimony that Ms. Gregg did not report having consented to the events that caused her to seek medical attention.  Rather, Ms. Gregg complained to Nurse Scherf that Petitioner punched her, held a knife to her throat, pinned her arms behind her head, and forced her to engage in sexual intercourse while she repeatedly told him no.  N.T. 135:14-136:19.  Nurse Scherf testified to observing bruising and

swelling to Ms. Gregg's ears, bruising and swelling to both eyes, a scratch over one eye, a bruise on her upper arm, a scratch on her shoulder, and bruises on both thighs.  N.T. 138:19-141:22.

Moreover, Ms. Gregg testified at trial that the incident, during which she was physically beaten, threatened, and forced to engaged in sexual intercourse with Petitioner despite her repeated cries of "No, no" and attempts to push Petitioner away, started when she was watching *The Sopranos*, which confirms that her report of consensual sex did not relate to the night of the incident.  N.T. 23:11-28:18, 67:19-21, 72:5-73:1.  Accordingly, even if a jury were presented with evidence that the incident occurred on March 12, 2006, they would not have found the sexual intercourse to have been consensual based solely on Nurse Scherf's notation in a medical record that Ms. Gregg and Petitioner engaged in consensual sex on that date.  As Petitioner is unable to show that the result of the trial would have been different, his ineffectiveness claim fails.  *See Strickland*, 466 U.S. at 694 (holding that the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

To the extent Ms. Gregg's testimony about the date of the incident may not have been consistent, trial counsel questioned Ms. Gregg on this inconsistency and argued in closings that it impacted her credibility.  *See* N.T. 62:1-63:12 and N.T. 15:7-21, Trial, Oct. 26, 2006.  The jury therefore heard Ms. Gregg's confusion as to the exact date of the incident and nevertheless convicted Petitioner, which is evidence that Petitioner's conviction was not dependent on her memory of the exact date.  Notably, when asked about reporting the assault to the police, Ms. Gregg testified about "being beat all night, then going to the hospital" and that she "was up for probably two days."  N.T. 57:14-21.  There is substantial evidence confirming that Ms. Gregg went to the hospital and reported the injuries to police on March 14, 2006, including the medical

11

records, police reports, and the testimony of Nurse Maffei, Nurse Scherf, and Officer Hald. Accordingly, Ms. Gregg's testimony about being up for "probably two days" could explain any discrepancy in her memory as to whether the incident occurred on March 12 or March 13, 2006.

Accordingly, a hearing would not enable Petitioner to prove factual allegations that would entitle him to habeas relief.  *See Johnson v. Lehman*, 295 F. App'x 548, 550 (3d Cir. 2008) (agreeing with the district court that a reasonable jury would not have determined that the defendant was not guilty, even with the testimony of two witnesses supporting the defendant's alibi defense, in light of the testimony of two eyewitnesses to the crime that described the defendant's involvement).  Consequently, even if § 2254 did not bar an evidentiary hearing, this Court, in its discretion, declines Petitioner's request.

**B.     The additional facts presented in Petitioner's Motion for Leave to Amend relate back to the original habeas petition and his request to include those facts is granted.**

After the R&R was issued, Petitioner filed a Motion for Leave to Amend seeking to add a "newly discovered witness statement " to support his previously raised claim of trial counsel's ineffectiveness for failing to investigate a known witness, James Hamlin.  Mot. Amend, ECF No. 51.  Mr. Hamlin made this statement on September 21, 2015, to a private investigator Petitioner's family hired to locate him.  *Id.* at 4 and Ex. 4.  Petitioner argues that Mr. Hamlin's statement supports his claim that the incident occurred on March 12, 2006, not March 13, 2006.

The AEDPA prescribes a one-year period of limitation to a petition for writ of habeas corpus under 28 U.S.C. § 2254.  28 U.S.C. § 2244(d).  The limitation period runs from the "date on which the judgment became final by the conclusion of direct review"[8] and is tolled in the

---

[8]      The AEDPA also provides that the one-year period of limitation may run, if later, from the "date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1).  Although Petitioner asserts that the statement is "newly discovered," this information could have been obtained years ago through the exercise of due diligence.  As Petitioner notes, the identity of Mr. Hamlin as a

12

"time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *Id.* Here, Petitioner's judgment of sentence became final on October 20, 2009. His PCRA petition was filed fifty-seven days later. State court review of the PCRA petition concluded on June 19, 2012. The petition for writ of habeas corpus was timely filed thirty days later on July 19, 2012, and was timely supplemented on January 2, 2013. However, the Motion for Leave to Amend was not filed until November 17, 2015. Accordingly, because the one-year period of limitations had expired when the Motion for Leave to Amend was filed, Petitioner can amend his claim only if the amendment relates back to the date of his original petition.

Rule 15(c) of the Federal Rules of Civil Procedure provides that an "amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). *But see Mayle v. Felix*, 545 U.S. 644, 662-64 (2005) (holding that because the AEDPA was enacted to "advance the finality of criminal convictions," Rule 15's "conduct, transaction, or occurrence" does not mean the same "trial, conviction, or sentence"). "Under Fed. R. Civ. P. 15(c), an amendment which, by way of additional facts, clarifies or amplifies a claim or theory in the petition may, in the District Court's discretion, relate back to the date of that petition if and only if the petition was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case." *United States v. Thomas*, 221 F.3d 430, 431 (3d Cir. 2000) (applying Rule 15 to a motion to amend a habeas corpus petition).

---

potential witness was known by trial counsel, appellate counsel, and PCRA counsel. Mr. Hamlin gave a statement to the police on March 14, 2006, providing his contact information, and was included on the prosecution's list of potential witnesses for trial. *See, e.g.* Mot. Amend Ex. 2. Accordingly, this subsection does not affect the date the one-year period of limitations began.

In the original habeas petition, Petitioner asserted that he informed trial counsel about James Hamlin, but that trial counsel failed to interview him.  Habeas Pet. 112, ECF No. 1-1.  He alleged that Mr. Hamlin was a "material fact witness," who was present the night of the incident and had had several interactions with both Petitioner and Ms. Gregg before, during, and after the incident.  *Id.*  Petitioner asserted that had trial counsel interviewed Mr. Hamlin, she "would have uncovered a vital defense witness that would have totally discredited some of the victims [sic] allegations at trial," and that counsel was therefore ineffective for not investigating.  *Id.*

Although the original habeas petition did not allege that Mr. Hamlin could testify as to the alleged discrepancy in the date of the incident, this Court concludes that the amendment "by way of additional facts, clarifies or amplifies a claim or theory in the petition," specifically why trial counsel was allegedly ineffective for failing to investigate James Hamlin as a witness, and "does not add a new claim or to insert a new theory into the case."  *See Thomas*, 221 F.3d at 431.  Accordingly, Petitioner's proposed amendment to include the 2015 statement of James Hamlin relates back to the original petition.  The Motion for Leave to Amend is therefore granted.  Because this Court is conducting de novo review, this additional evidence is being considered as part of its review and the matter will not be remanded back to the Magistrate Judge for the preparation of a new R&R.  Additionally, for the reasons set forth above, this Court declines to hold an evidentiary hearing addressing these additional facts.

**C.     This Court agrees with Magistrate Judge Perkin that the state courts' determination that there was sufficient evidence to support Petitioner's convictions was not based on an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of clearly established federal law.**

Petitioner objects to the R&R, disagreeing with the Magistrate Judge's conclusion that the state courts' adjudication of the sufficiency of the evidence was not contrary to, or an

unreasonable application of, the *Jackson* standard.[9]  Objs. 20-21, ECF No. 43.  First, Petitioner complains that the state court, on direct appeal, limited its review to only direct examination testimony, as evidenced by its citation to the notes of testimony, which contravenes *Jackson's* requirement that a court reviewing the sufficiency of the evidence needs to consider the entire record.  *Id.*at 8-11, 20-21.

Aside from Petitioner's assumption that the direct appeal court did not review the entire record because it only included citations to direct testimony, there is no evidence that the court failed to consider the entire record.  Notably, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319 (citing *Johnson v. Louisiana*, 406 U.S. 355, 362 (1972)).  Applying this standard, it is likely that a court "viewing the facts in the light most favorable to the prosecution" would find support for a conviction in the evidence offered directly by the prosecution and cite to this evidence.  This does not mean that the court failed to consider the other evidence presented at trial.  Moreover, this Court notes, for example, that the cross-examination of Ms. Gregg covered impeachment issues, such as the discrepancy in the date of the incident and her prior convictions, and touched upon the physical assault, but did not go into the details of her rape.  Therefore, in citing evidence sufficient to support the jury's verdict on the rape and indecent assault charges, the appellate court was unable to cite to Ms. Gregg's testimony on cross-examination simply

---

[9]     In *Jackson*, the United States Supreme Court held "that in a challenge to a state criminal conviction brought under 28 U. S. C. § 2254 -- if the settled procedural prerequisites for such a claim have otherwise been satisfied -- the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  *See also Johnson v. Mechling*, 446 F. App'x 531, 538 (3d Cir. 2011) ("The applicable clearly established federal standard is set out by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307.").

because certain factual matters were not addressed.  Regardless, this Court has reviewed the entire record and finds sufficient evidence to support the verdict.

Next, Petitioner contends that the appellate court's determination, which referred to the rape and assault on March 13, 2006, was based on an unreasonable determination of the facts because Ms. Gregg testified that the incident occurred on March 14, 2006.  Objs. at 12-14.

As previously discussed, the discrepancy in the date of the incident by one or two days did not affect the jury's verdict,[10] nor did it impact the determination of the sufficiency of the evidence.  *See In re N.G.*, No. 287 EDA 2015, 2016 Pa. Super. Unpub. LEXIS 788, at *9-10 (Pa. Super. Ct. 2016) (concluding that the date discrepancy[11] was not dispositive of the sufficiency of the evidence claim); *Commonwealth v. Cochrane*, No. 1488 Phila. 1988, 1989 Pa. Super. LEXIS 4097, at *5-6 (Pa. Super. Ct. Jan. 3, 1989) (holding that "[w]hile there were inconsistencies in the victim's testimony, they dealt with the exact dates and times of the assaults, and not the occurrence of the assaults," and that there was ample evidence to support the jury's verdict).  The

---

[10]     The Information charged Petitioner with having committed the offenses "[o]n or about March 13, 2006."  Although not specifically raised in the habeas petition, this Court has nevertheless considered the variance issue and agrees with the state court that Petitioner was not prejudiced.  *See* PCRA Op. 8-9.
     A variance between the date charged in the criminal information and the testimony at trial "can result in a reversible error only if it is likely to have surprised or otherwise has prejudiced the defense."  *United States v. Daraio*, 445 F.3d 253, 262 (3d Cir. 2006).  "A variance does not prejudice a defendant's substantial rights (1) if the indictment sufficiently informs the defendant of the charges against him so that he may prepare his defense and not be misled or surprised at trial, (2) if the variance is not such that it will present a danger that the defendant may be prosecuted a second time for the same offense."  *United States v. Schoenhut*, 576 F.2d 1010, 1021-22 (3d Cir. 1978).  "'Where "on or about" language is used, the government is not required to prove the exact dates, if a date reasonably near is established."  *Real v. Shannon*, 600 F.3d 302, 307-09 (3d Cir. 2010) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1323 (2d Cir. 1987)) (finding that "where, as here, the government's evidence proves that an offense was committed within a month of the month specified in an 'on or about' indictment or information, the 'reasonably near' requirement is satisfied").
[11]     In *In re N.G.*, the charging document stated that the offense occurred on October 13, 2014, but the witnesses testified the offense occurred on October 14 or 15, 2014.  *In re N.G.*, 2016 Pa. Super. Unpub. LEXIS 788, at *9.

cases Petitioner relies on to support this claim are distinguishable because those victims were unable to narrow the time of the alleged rapes to a date "reasonably near" the date specified in the "on or about" indictment or information.  *Compare Real v. Shannon*, 600 F.3d 302, 307-09 (3d Cir. 2010) (finding no variance issue where the prosecution charged that the rape occurred "on or about December" and the victim testified that she was assaulted "sometime between November and December 1996"), *with Commonwealth v. Karkaria*, 625 A.2d 1167 (Pa. 1993) (finding that there was no direct evidence that the sexual assaults occurred between April 1984 and September 1984) *and Commonwealth v. Devlin*, 333 A.2d 888, 889 (Pa. 1975) (stating that the victim could not give any indication as to the time of year, the month, day, or date when the crime occurred).

Moreover, the state courts' determination that the incident occurred on March 13, 2006, was not an unreasonable determination of the facts because regardless of Ms. Gregg's testimony, Nurse Scherf testified that she performed the sexual assault exam on March 14, 2006, regarding the incident that occurred on March 13, 2006, *see* N.T. 133:2-12, and Officer Hald testified that he took the report from Ms. Gregg at the hospital on March 14, 2006, as to the events of the previous night, *see* N.T. 181:14-17, 185:10-13.

Petitioner also argues that the state courts' factual findings that he threatened Ms. Gregg with a knife "before" the rape are not supported by the evidence.  Objs. 14-16.

Contrary to Petitioner's assertion, the state courts' determination is supported by the record.  Ms. Gregg testified at trial that after Petitioner punched her repeatedly in the face, he stood at the end of the bed with a kitchen knife, told her he was going to slice her throat, and then looked at their infant child and said "mommy's going to die tonight."  N.T. 24:22-25:2.  Ms. Gregg testified that Petitioner also stabbed at the bed next to her face.  N.T. 25:4-6.  She testified

17

that after she was beaten and after he stabbed at the bed, Petitioner "wanted [her] to perform sexual acts on him." N.T. 25:22-26:4, 103:7-20. Ms. Gregg testified that while Petitioner forced her to have sex with him, she could not see the knife and assumed he had put it under the mattress. N.T. 26:22-27:9. She testified that after the rape, he held the knife to her throat and threatened to kill her, saying "it would be one slice." N.T. 48:2-21. This sequence of events was also explained by the trial judge at sentencing. N.T. 17, Sentencing, Feb. 20, 2007. (The Judge commented that after Petitioner beat Ms. Gregg, "he then uses a knife to threaten her, directly and indirectly. He then decides he wants her to touch his penis. . . . And then, he has forcible sexual intercourse."). Accordingly, the state courts' factual determination that Ms. Gregg was threatened with a knife before the beating and rape is supported by the evidence.

Next, Petitioner submits that the state courts' conclusion that he repeatedly punched Ms. Gregg in and about the face with such force that she bled and had side effects seven months later is unsupported in the record. Objs. 18.

The state courts' finding in this regard is supported by Ms. Gregg's testimony. *See, e.g.* N.T. 23:24-24:18 (Ms. Gregg testified that Petitioner punched her in the ears at "full force" causing her to bleed). *See also* N.T. 69:6-24, 72:14-17. Additionally, the sentencing court commented that Petitioner beat Ms. Gregg "to a pulp" and that "[y]ou can hardly see her ears anymore. He beat them so badly." N.T. 17, Sentencing, Feb. 20, 2007. This, in addition to Ms. Gregg's trial testimony and the medical examination confirming the swelling and bruising to Ms. Gregg's ears, confirms that the state courts' factual findings as to the severity of the injuries was not unreasonable.

Finally, Petitioner complains that the record is lacking in several respects and that Ms. Gregg's testimony is the only evidence that a knife was involved and linking him to the crimes. Objs. at 16-19.

"Pennsylvania law explicitly holds that '[t]he testimony of a complainant need not be corroborated' in cases of rape and sexual assault." *McKinnon v. Harlow*, No. 12-6308, 2014 U.S. Dist. LEXIS 181463, at *26-27 (E.D. Pa. Nov. 21, 2014) (citing 18 Pa. Cons. Stat. § 3106; *Commonwealth v. Gabrielson*, 536 A.2d 401, 409 (Pa. Super. Ct. 1988)). Therefore, Ms. Gregg's testimony, alone, was sufficient to support Petitioner's convictions. However, Ms. Gregg's testimony was corroborated, albeit not with eye-witness testimony to the incident, by her prompt reports to her friends, the hospital staff, and the police, and by the medical records detailing her injuries.

After de novo review, this Court agrees with Magistrate Judge Perkin that the state courts' adjudication of the sufficiency of the evidence was not based on an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of federal law. Petitioner's first objection to the R&R is overruled.

**D.     The Magistrate Judge's and the state courts' conclusions that Petitioner failed to establish trial counsel's ineffectiveness in the plea process was not based on an unreasonable application of the facts or of *Strickland*.**

Petitioner claimed in his habeas petition that he was denied his constitutional rights to effective assistance of counsel and due process when trial counsel failed to investigate his sentence exposure, causing him to rely on erroneous advice when formulating his decision to reject the prosecution's plea offer, and when counsel failed to convey the re-extended offer of four (4) to eight (8) years. He asserted that the state courts' rejection of this claim was based upon an unreasonable determination of the facts.

In addressing this issue, Magistrate Judge Perkin considered the trial court's colloquy[12] with Petitioner on October 24, 2006, prior to opening statements, and trial counsel's testimony at the hearing on post-sentence motions on May 24, 2007.[13]  R&R 12-16.  The R&R also cited the trial court's discussion of this issue in its 1925[14] opinion and the Pennsylvania Superior Court's determination on direct appeal.  R&R 16-19.  The R&R outlined the applicable standards of review and, applying these standards, concluded that Petitioner had not carried his burden of showing that the state courts' findings of fact were objectively unreasonable and therefore denied his ineffective assistance of counsel claims.  R&R 20-22.

Petitioner objects to the Magistrate Judge's conclusion that "Petitioner does not point to a decision of the PCRA court *or* the appellate court which is contrary to, or an unreasonable application of, Sixth Amendment jurisprudence and he does not identify any United States

---

[12]     The trial court explained the purpose of the colloquy was so the court would be satisfied Petitioner understood the plea offer and, also, to eliminate the possibility of Petitioner arguing in the future that counsel was ineffective.  *See* N.T. 8-21, Trial, Oct. 24, 2006 (The trial court commented, "we don't want to hear later on [from Petitioner] that if I would have known what the offer is I would have accepted.").  The offer, which Petitioner acknowledged that he understood, was for a plea of guilty to a felony one Aggravated Assault in exchange for a sentence of four (4) to eight (8) years imprisonment followed by five (5) years of probation.  *Id.* at 6-15.  After speaking with counsel, Petitioner rejected the offer.  *Id.* at 14:4-23.

[13]     Trial counsel testified that on October 26, 2006, the Commonwealth disclosed it had discovered that Petitioner had two additional felony convictions, which would result in a significantly higher guidelines range.  N.T. 40:19-41:10, 44:3-25, Post-Sentence Hearing, May 24, 2007.  In light of this information, the Commonwealth re-extended its plea offer.  *Id.* at 45:11-14.  Additionally, the Commonwealth "sweetened" the offer by also agreeing to run the three Gagnons concurrently.  *Id.* at 58:11-59:23.  Trial counsel testified that she discussed this information with Petitioner, including the increased sentencing exposure if he were convicted and the re-extended plea offer of four (4) to eight (8) years.  *Id.* at 41:11-13, 45:3-46:19, 49:11-15.  Trial counsel testified that she informed Petitioner that "it was a very good offer" and that if he was convicted, he "would spend the rest of his life in jail."  *Id.* at 24:23-25, 55:6-8, 65:24-66:1.  Petitioner nevertheless rejected the re-extended plea offer.  *Id.* at 47:1-5, 67:21-22.

[14]     Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure provides that "upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found."  Pa.R.A.P. 1925(1).

Supreme Court precedent that the Pennsylvania Superior Court unreasonably applied." R&R 22 (emphasis added). Petitioner argues that he had not pointed to a decision of the PCRA court or the appellate court because he was challenging an issue raised on direct appeal, not in the PCRA court. Objs. 24-25.

This objection is overruled because the Magistrate Judge clearly understood that Petitioner was challenging a decision on direct appeal and considered the correct evidence because the R&R cited to the opinions on direct appeal, not on PCRA review.

Petitioner further challenges the Magistrate Judge's conclusion that the state courts did not unreasonably apply the Sixth Amendment. Objs. 25-27. He asserts that the state appellate courts, in determining that he made a knowing intelligent decision to reject the plea,[15] did not apply the correct standard of review for an ineffectiveness claim. *Id.* at 25-26. He submits that the evidence at the post-sentence motions hearing establishes counsel's ineffectiveness. *Id.* at 26-27 (citing *Riggs v. Fairman*, 399 F.3d 1179 (9th Cir. Mar. 7, 2005)).

After review of the Pennsylvania Superior Court's opinion on direct appeal, this Court agrees with Magistrate Judge Perkin that the court did not unreasonably apply clearly established federal law. Although the court applied state law to evaluate Petitioner's ineffective assistance claim, that standard effectively mirrors the federal counterpart enunciated in *Strickland*. *Compare Strickland*, 466 U.S. 668, *with* Commonwealth v. Marinez, 2001 PA Super 154, P14 (Pa. Super. Ct. 2001). *See also Pirela v. DA of Phila.*, No. 00-5531, 2014 U.S. Dist. LEXIS 67947, at *37 (E.D. Pa. May 16, 2014) (finding that Pennsylvania's standard to evaluate a petitioner's ineffective assistance claim "mirrors the federal counterpart annunciated in *Strickland*").

---

[15]   The finding was made by the trial court, not specifically by the direct appeals court.

Moreover, the evidence established that trial counsel was not ineffective in the plea process.  As explained by the state courts and supported in the record, trial counsel advised Petitioner that his sentencing guidelines would be higher based on the additional prior convictions, that the plea offer of four (4) to eight (8) years was again extended by the Commonwealth, and that if convicted, Petitioner "would spend the rest of his life in jail."  *See infra.* n.13.  Although it appears that trial counsel may have incorrectly advised Petitioner about his new guidelines range, *cf.* N.T. 49:5-23, 53:3-13, Post-Sentence Hearing, May 24, 2007, there was no prejudice.  Trial counsel apparently advised Petitioner that his guidelines range were: "Rape, 96 to 114 months; Aggravated Assault, 72 to 84 months; and Terroristic Threats, 12 to 18 months."  *Id.* at 49:21-23.  However, the guidelines range for Rape and Aggravated Assault were 120 to 120 months, each.  *Id.* at 52:6-10.  If Petitioner had received the highest sentence within the guidelines range incorrectly reported by counsel, he was facing exposure of 216 months minimum.  The minimum sentence he ultimately received from the court was 210 months, below the advised exposure.  N.T. 11:14-25.  Furthermore, before the trial began, the court explained to Petitioner that he could receive up to twenty years on each of his two felony-one charges, in addition to time on any other charges that did not merge.  N.T. 5:7-10, 7:8-11, Trial, Oct. 24, 2006.  The court explained that the sentencing guidelines offer only a minimum suggested sentence, which the court does not have to follow.  *Id.* at 7:12-25.  Accordingly, not only did Petitioner fail to establish that trial counsel's performance fell below an objective standard of reasonableness, *see Marshall*, 307 F.3d at 85 (holding that it is not necessary for the court to "guarantee each defendant a perfect trial with optimally proficient counsel, but rather to

guarantee each defendant a fair trial, with constitutionally competent counsel"), he was not prejudiced.[16]

> **E.    Petitioner fails to overcome the presumption that trial counsel's decision not to call two witnesses was sound, or to show that these witnesses were available and that there is a reasonable probability that the outcome of the trial would have been different.**

In his habeas petition, Petitioner claimed that trial counsel was ineffective for failing to call Rob McCraery and Ms. Gregg's mother as witnesses to rebut Ms. Gregg's testimony that Petitioner previously kidnapped and assaulted her.  Habeas Pet. 73-74.  However, as the state courts noted, the only signed witness certifications[17] presented in the PCRA petition were from Leon Sporish, Petitioner's father, and Kim Ottaviano, his girlfriend, both of whom the PCRA court determined had obvious potential bias.

In deciding this issue, the R&R cited the PCRA court's opinion and the Pennsylvania Superior Court's opinion affirming the PCRA court.  R&R 45-46.  These passages explain why the state courts concluded that counsel was not ineffective.  *See id.*  The Magistrate Judge further determined that Petitioner could not overcome the presumption that counsel had a sound basis for her decision, or that there is a reasonable probability that the result of the trial would have been different in light of the other evidence corroborating Ms. Gregg's testimony.  *Id.* at 46-47.

---

[16]    Unlike *Riggs*, which Petitioner relies on, Petitioner's maximum exposure also did not change.  The attorney in *Riggs* was found to be ineffective where she advised the defendant, based only on her limited knowledge of his criminal record, that the maximum exposure was "only nine years and that he should therefore reject the state's offer of a five-year prison term," when in fact the defendant's exposure was 25-years-to-life.  *Riggs*, 399 F.3d at 1183.

[17]    "To prevail on a claim for ineffective assistance of counsel for failure to investigate or call a witness, [the petitioner] must demonstrate the witness existed, the witness was available for trial, counsel was informed of the existence of the witness or should have known of the witness' existence, the witness would have testified on petitioner's behalf, and the absence of the testimony prejudiced the petitioner."  *Johnson v. Colleran*, No. 05-1871, 2007 U.S. Dist. LEXIS 30951, at *11-12 (E.D. Pa. Apr. 25, 2007) (citing *Commonwealth v. Pursell*, 724 A.2d 293, 306 (Pa. 1999)).

Petitioner objects, arguing that the Magistrate Judge only applied § 2254(d)(1) and never addressed § 2254(d)(2).[18]  Objs. 28.  Additionally, he contends that the Magistrate Judge incorrectly concluded that he had to establish a reasonable probability that he would have been acquitted to prove prejudice under *Strickland.  Id.* at 29.

After de novo review under both subsections, the objections are overruled.  Petitioner has failed to establish trial counsel's ineffectiveness for failing to call these witnesses.  *See Strickland*, 466 U.S. at 689-90 (A "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."); *Manchas v. Superintendent of SCI Huntingdon*, 428 F. App'x 184, 190 (3d Cir. 2011) ("Witness selection is entrusted to counsel's sound judgment, not to the defendant."); *Johnson*, 2007 U.S. Dist. LEXIS 30951, at *11-12.  Additionally, to establish prejudice under *Strickland*, a petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Roe*, 528 U.S. at 482 (quoting *Strickland*, 466 U.S. at 694).  Accordingly, an ineffectiveness claim for counsel's failure to call or investigate witnesses must be denied if the petitioner "failed to show a reasonable likelihood that such an interview would have produced any useful information not already known to trial counsel, much less that any such information would have dictated a different trial strategy or led to a different result at trial" or "failed to show any reasonable probability that he would have been acquitted

---

[18]      28 U.S.C. § 2254(d) provides:
(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

had [the witness] testified either alone or in conjunction with petitioner." *Lewis v. Mazurkiewicz*, 915 F.2d 106, 113-15 (3d Cir. 1990).

> **F.      The alleged false testimony was not reasonably likely to have affected the jury's verdict and counsel was not ineffective for failing to object.**

Petitioner argues that the R&R cannot be adopted because it did not address his claim of false testimony, but only considered his claim of prosecutor misconduct during closing arguments. Objs. 36.  In his habeas petition, Petitioner cited to several alleged instances of false testimony, many of which related to the injuries Ms. Gregg suffered during the incident.  *See* Habeas Pet. 65-80.  As mentioned above, he also asserted that Ms. Gregg gave false testimony about a prior kidnapping and assault by Petitioner.  *Id.*  He claimed that trial counsel was ineffective for not challenging the testimony and the prosecutor's statements during closing arguments.  *Id.*

Contrary to Petitioner's objection, the Magistrate Judge did address his habeas claims regarding false testimony.  *See* R&R 47-51.  Although the R&R used the subheading "Closing Arguments," the first sentence states: "Petitioner contends that the prosecutor elicited *false testimony* from Detective Dinan and Police Officer Hald because they testified to injuries to the victim that did not exist, specifically a lump in the victim's head with a gash in it, a lip laceration and swollen black eyes .  Petitioner *also* contends that the prosecutor committed misconduct in his closing argument. . . ."  *Id.* at 47 (internal citations omitted and emphasis added).  The R&R cited portions of the state courts' opinions that addressed both the claims regarding closing arguments and fabricated testimony.  *Id.* at 47-49.

After de novo review, this Court agrees that the state courts' decisions were not contrary to, nor did they involve an unreasonable application of, clearly established federal law, nor were they based on an unreasonable determination of the facts.  The alleged falsehoods regarding the

injuries, such as Petitioner's challenge that the doctor noted bruising to the mastoid area, which is near the ear, instead of the cheek, was not reasonably likely to have affected the jury's verdict. *See Lambert v. Blackwell*, 387 F.3d 210 (3d Cir. 2004) (holding that "the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury" (internal quotations omitted)).  The prosecutor's statements in closing arguments also were not sufficiently egregious to warrant relief.  *See Greer v. Miller*, 483 U.S. 756, 765 (1987) ("To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." (internal quotations omitted)).  Counsel was therefore not ineffective for failing to object.  *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (explaining that "counsel cannot be deemed ineffective for failing to raise a meritless claim").  Furthermore, counsel's failure to object to this testimony may have been a strategic decision not to highlight the injuries Ms. Gregg suffered to her face and head.  *See Buehl v. Vaughn*, 166 F.3d 163, 170 (3d Cir. 1999) (holding that counsel may reasonably conclude that it is strategically preferable not to request a cautionary instruction because it could "have the undesired effect of highlighting the other crimes evidence.").  The R&R is adopted and Petitioner's objection is overruled.

> **G.    Trial counsel was not ineffective for failing to investigate and call an expert witness to offer an alternative explanation for Ms. Gregg's injuries and discredit her testimony.**

In his next objection, Petitioner asserts that the Magistrate Judge erred in combining his claims that trial counsel was ineffective for failing to investigate and for failing to call an expert witness at trial.  Objs. 3.  Petitioner asserts that trial counsel should have presented expert testimony to provide the jury with an alternative explanation for Ms. Gregg's injuries, which he submits were caused by her medications, and testimony that Ms. Gregg's alleged mental illness caused her to "truly believe" Petitioner raped and assaulted her.  *Id.* 37-39; Habeas Pet. 81-93.

After de novo review, this Court finds that the Magistrate Judge thoroughly analyzed all of Petitioner's claims in this regard and properly rejected his arguments after considering the record and the state court opinions. The R&R's discussion of this issue is incorporated herein and Petitioner's objection is denied.

**H.    Petitioner has failed to show a *Brady* violation because the evidence he cites was not suppressed and/or was not material to his case.**

In his habeas petition, Petitioner complained that exculpatory evidence was withheld before trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Habeas Pet. 118-27. This evidence included: (1) fifteen of eighteen pictures of the victim's injuries taken by law enforcement and hospital staff; (2) scientific test results from a rape kit administered at the hospital, and alleged blood on a pillow case recovered from the crime scene; (3) testimonial evidence from Doctors Eintein and Delcoloris, who treated the victim at the hospital; and (4) testimonial evidence from James Hamlin. *Id.*

After considering Petitioner's claims and the state courts' opinions, the Magistrate Judge agreed with the state courts that the absence of the rape kit, bloodied pillowcase, and missing photographs played to Petitioner's advantage because trial counsel argued that the absence of this evidence put Ms. Gregg's credibility in dispute. R&R 60-68. The R&R stated that, as noted by the Pennsylvania Superior Court, the failure to turn over the rape kit was inconsequential because Petitioner claimed there was consensual sex, conceding intercourse, and Nurse Scherf testified that there was no trauma to Ms. Gregg's anatomy. *Id.* at 68. As to the testimony evidence, the Magistrate Judge determined that Petitioner admits that the names of the three witnesses appeared on the prosecution's potential witness list for trial, and based his *Brady* claim on the fact that they were not called to testify. R&R 66. The R&R explained that this does not state a *Brady* violation, *see Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) ("There are three

27

components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.").

Petitioner objects to the R&R, asserting that trial counsel's argument did not relieve the prosecution of its duty to disclose *Brady* evidence and that if he had the evidence, the jury may have reached a different verdict.  Objs. 40-47.  He contends that prejudice under *Brady* is also referred to as "materiality" and that the court must consider any adverse effect the prosecutor's failure to disclose might have had on the preparation and presentation of the defendant's case. *Id.*  Petitioner argues that the courts' suggestion that trial counsel's ability to make a good closing argument about the missing evidence relieves the prosecution of its duty to disclose is contrary to the law.  He asserts that it is reasonably likely that this evidence, either individually or in combination, could have led to a different verdict.

Before addressing the materiality issue, this Court considers whether the evidence was "suppressed."  "'[T]he rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government.'"  *Dukes v. Pappas*, 405 F. App'x 666, 669 (3d Cir. 2010) (quoting *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1993)).  "*Brady* does not compel the government to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself."  *United States v. Pelullo*, 399 F.3d 197, 213 (3d Cir. 2005) (internal quotations omitted).  Further, where the *Brady* material is information that the defendant could use on cross-examination to challenge the credibility of the prosecution witnesses, the defendant's due process rights to a fair trial are satisfied if disclosure is made the

day that the prosecution witnesses are scheduled to testify in court.  *United States v. Higgs*, 713

F.2d 39, 44 (3d Cir. 1983).

      As to the scientific tests and the testimonial evidence, Petitioner was aware of this

evidence in advance of trial and could therefore obtain it for himself.  Exhibit 1 to the habeas

petition is the police department's evidence log dated March 15, 2006, which lists both the rape

kit and the pillow case.  Ex. 1, ECF No. 1.  The rape kit is also mentioned in the victim's medical

records, which were admittedly provided prior to trial.  *See* Ex. 22, ECF No. 1 (Ms. Gregg's

medical records dated March 14, 2006).  Petitioner acknowledges that he knew of Doctors

Eintein and Delcoloris, as well as James Handlin well before trial.  *See also* Ex. 24, ECF No. 1

(James Handlin's statement to police dated March 24, 2006).  In fact, Petitioner based his *Brady*

claim on the premise that the prosecution listed these individuals as potential trial witnesses but

failed to call them.  Habeas Pet. 123-124.

      Accordingly, there is no reason to address the materiality of this information because it

was not suppressed.  *See, e.g. Weaver v. Palakovich*, No. 10-3888, 2013 U.S. Dist. LEXIS

18330, at *15-16 (E.D. Pa. Feb. 11, 2013) (finding no *Brady* violation where the defendant did

"not assert that he was unaware of the existence of the rape kit at the time of trial" and a rape kit

was listed on the police report as being collected, because the "results of the rape kit could have

been obtained with a reasonable amount of due diligence").  Moreover, considering the limited

value of this evidence and defense counsel's argument to the jury about how the absence of this

evidence weighed on Ms. Gregg's testimony, this Court also does not find that trial counsel was

ineffective for failing to obtain this evidence for herself.  *See Strickland*, 466 U.S. at 689-90

("There are countless ways to provide effective assistance in any given case. Even the best

criminal defense attorneys would not defend a particular client in the same way.").

As to the photographs, however, Petitioner contends that he first learned of this evidence during Detective Dinan's testimony at trial.  Habeas Pet. 119; N.T. 178:3-19.  "When assessing materiality, the Court must address whether there is a 'reasonable probability that timely disclosure of the evidence would have changed the result of the proceeding.'"  *United States v. Alvin*, 30 F. Supp. 3d 323, 334 (E.D. Pa. 2014) (quoting *United States v. Fallon*, 348 F.3d 248, 252 (7th Cir. 2003)).  A showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted in the defendant's acquittal, but whether there is a "reasonable probability" of a different result, which is shown when the prosecution's evidentiary suppression "undermines confidence in the outcome of the trial."  *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995).

After de novo review, this Court concludes that the photographs were not material because, inter alia, they were not the only evidence of the injuries to Ms. Gregg.  Rather, the jury heard testimony from Ms. Gregg, hospital staff, and the police officer about the nature of the injuries to Ms. Gregg.  These missing photographs would not have "put the case in a whole different light."  *See Kyles*, 514 U.S. at 435 (explaining that a defendant demonstrates a *Brady* violation "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict").  Thus, the alleged suppression of this evidence does not undermine the confidence in the outcome of the trial.  After de novo review, Petitioner's *Brady* claim is rejected and his objection is overruled.

**I.      Petitioner's appeal of the Magistrate Judge's Order denying pretrial motions is untimely and, regardless, the Order was not contrary to law and is affirmed.**

Pursuant to the Federal Magistrate Judges Act, magistrate judges can hear and decide any pretrial matter pending before the court.  *See* 28 U.S.C. § 636(b)(1)(A).  This authority is separate and distinct from their ability to hear certain dispositive motions and file proposed

findings of fact and recommendations (R&R) for the disposition of such motions.  *See* 28 U.S.C. § 636(b)(1)(B).

Petitioner's appeal was due within ten days of being served with the Order dated May 7, 2015, which was mailed to him the same day.  His request for an extension of time was clearly limited to the R&R, and made no mention of the separate Order entered by Magistrate Judge Perkin.  Petitioner's challenge to the May 7, 2015 Order, included in his objections dated July 10, 2015, is therefore untimely.

Regardless, after review of the pretrial motions and of Petitioner's challenge to the Order, this Court finds that the Magistrate Judge's decision is not clearly erroneous or contrary to law.[19]

### J.    There is no basis for the issuance of a certificate of appealability.

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'"  *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)).  "Where a district court has rejected the constitutional claims on the merits, . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of

---

[19]    This Court notes that unlike the latest Motion for Leave to Amend discussed in this Memorandum, Petitioner's first Motion for Leave to Amend, ECF No. 35, filed on September 12, 2014, sought leave to present an entirely new claim years after the statute of limitations expired.  *See* Section IV B *infra*.  Additionally, the allegedly "new" facts he sought to include, many of which were discussed in his habeas corpus petition, were part of the state court record and were considered by the Magistrate Judge in the R&R.

reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

For the reasons set forth herein, jurists of reason would not find the Court's assessment debatable or wrong. *See, e.g. Ortiz v. Sauers*, No. 12-CV-1209, 2016 U.S. Dist. LEXIS 48762, at *3 (E.D. Pa. Apr. 8, 2016) (refusing to issue a certificate of appealability after finding that the state court, which determined there was sufficient evidence supporting the petitioner's rape conviction, was entitled to deference).

## V.   CONCLUSION

After de novo review of the habeas corpus petition and briefs, the complete federal and state court records, the R&R, and Petitioner's objections to the R&R, and for the reasons set forth herein, the R&R is adopted. Petitioner's Motion for Stay and Abeyance is denied. The Motion for Leave to Amend is granted and the additional claim has been considered on its merits. The petition for writ of habeas corpus, including the additional claim, is dismissed without an evidentiary hearing, and there is no basis for issuance of a certificate of appealability. Also, the Magistrate Judge's Order dated May 7, 2015, denying pretrial motions is not clearly erroneous or contrary to the law and Petitioner's untimely appeal is denied.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge